IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
DANVILLE DIVISION

| | |
|---|---|
| ANDY STANLEY, et al., ) | |
| ) | Case No. 4:07CV00047 |
| Plaintiffs, ) | |
| ) | |
| v. ) | **MEMORANDUM OPINION** |
| ) | |
| YATES MOBILE SERVICES CORP., et al., ) | |
| ) | By: Jackson L. Kiser |
| Defendants. ) | Senior United States District Judge |
| ) | |

Before me is Defendants' *Motion to Dismiss*. I heard oral argument on this motion on December 13, 2007, and it has been briefed by the parties and is now ripe for decision. For the reasons given below, I will **GRANT** the *Motion to Dismiss*.

## I. STATEMENT OF FACTS AND PROCEDURAL HISTORY

This case arises from the sale of a "modular home" by defendant Yates Mobile Service Corp. ("Yates") to the Plaintiffs. The home in question was manufactured by defendant The Commodore Corporation ("Commodore") and sold by Yates to Plaintiff Andy Stanley ("Stanley") by a written agreement on October 3, 2003, which also states that Yates and Stanley expressly agreed that "the Unit [home] is not a consumer product." *Exhibit Contract* ¶ 32. According to the *Complaint*, the home was warranted as and represented to be a "manufactured" home, but is actually a "modular" (also known as "industrialized") home. *Complaint* ¶¶ 1, 8-9.

Plaintiffs filed this action in this United States District Court on October 5, 2007, alleging that Defendants have violated the Magnuson-Moss Warranty Act (MMWA), and have committed numerous counts of fraud under Virginia laws. Defendants have moved to dismiss this case, arguing that the MMWA does not apply to a "modular home" such as the one at issue in this case, and that the remaining state law claims should be dismissed pursuant to the Court's

discretion under 28 U.S.C. § 1367.

## II. STANDARD OF REVIEW

Dismissal under Rule 12(b)(6) of the Federal Rules of Civil Procedure is limited to "the extraordinary case where the pleader makes allegations that show on the face of the complaint some insuperable bar to relief." *Browning v. Vecellio & Grogan, Inc.*, 945 F. Supp. 930, 931 (W.D. Va. 1996) (internal quotation omitted). When considering a motion to dismiss, "the court should accept as true all well-pleaded allegations" and construe those allegations in the light most favorable to the plaintiff. *Mylan Labs, Inc. v. Matkar*, 7 F.3d 1130, 1134 (4th Cir. 1993). While the complaint need not provide detailed factual allegations, the basis for relief in the complaint must state "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1965 (2007). Assuming the factual allegations in the complaint are true, they "must be enough to raise a right to relief above the speculative level" or dismissal is appropriate. *Id*.

## III. DISCUSSION

The sole federal cause of action raised in the *Complaint* lies under the MMWA. The basic question before me is whether the MMWA covers the sale of a modular home. After analyzing the language of the statute and surveying the other federal courts that have considered this question, I must answer this question in the negative. The MMWA does not cover the sale of a modular home, and I will therefore grant Defendants' *Motion to Dismiss*.

The MMWA creates a federal cause of action for breach of warranty if the warranted property is a "consumer product." 15 U.S.C. § 2301(1). A consumer product under the statute is defined as "any tangible personal property which is distributed in commerce and which is normally used for personal, family, or household purposes (including any such property intended

to be attached to or installed in any real property without regard to whether it is so attached or installed)." *Id.* Every federal court that has interpreted this section has held that modular homes are not personal property, and are therefore not consumer products covered by the MMWA. *Coppernoll v. Custom Housing Center, Inc.*, 488 F. Supp. 2d 641, 647 (W.D. Mich. 2007); *Clark v. Jim Walter Homes, Inc.*, 719 F. Supp. 1037, 1044-45 (M.D. Ala. 1989).

In traditional property law, standard site-built American houses are not "personal property" but rather a species of "real property," so intertwined with the land they are built upon that they are treated as a part of that land. By contrast, "Mobile homes" have usually been treated under American law as a type of personal property. *See e.g.*, *Nowlin v. Tammac Fin. Corp.*, 321 B.R. 678, 682-83 (E.D. Pa. Bankr. 2005), aff'd 2005 U.S. Dist. LEXIS 23881 (E.D. Pa. Oct. 17, 2005) (holding that under Pennsylvania law, a mobile home was personal property where it was not permanently attached to the land with a concrete wall foundation despite the fact that its wheels had been removed). Mobile homes, which originally were small trailers in the early Twentieth Century, have gradually been eclipsed in popularity by so-called "manufactured homes," which are larger, often have wheels removed, and have multiple separated rooms within a self-contained structure. 2-18B Powell on Real Property § 18B.01 (2008). Manufactured homes are necessarily less mobile than their mobile home predecessors, but nevertheless are still moved in one piece to the site where they are finally set up. Courts have therefore regularly held that such an intentionally mobile product (e.g., manufactured or mobile housing), that is purchased and then moved to the site of the home in one piece, is a "consumer product" governed by the MMWA. *See e.g.*, *Yeomans v. Homes of Legend, Inc.*, 2001 WL 237313, at *5 (M.D. Ala. Mar. 5, 2001) (finding that the MMWA applies to sales of manufactured homes).

Plaintiff avers that a modular home is likewise a highly-mobile unit of housing,

purchased from a supplier and then put together onsite in a way quite different from the construction of a site-built home. Plaintiff also believes that since modular homes have been held to be "goods" and not "real property" for purposes of Article 2 of the Uniform Commercial Code, therefore the scope of the MMWA should be interpreted in tandem with those decisions. *See Ritz-Craft Corp. v. Stanford Mgmt. Group*, 800 F. Supp. 1312, 1317 (D. Md. 1992) (holding that the modules used to construct a modular home are "goods" under UCC § 2-105). However, the UCC definition of a "good" for purposes of coverage under the UCC warranty provisions is a statutorily defined term different in kind from the traditional property law term "personal property." As the *Clark* case notes, when it drafted the MMWA, Congress used terms with well established meanings in traditional property law, such as "personal property" and "real property." *Clark*, 719 F. Supp. at 1043. Therefore, the treatment of modular homes under the UCC is irrelevant to this inquiry, as the two refer to different definitions altogether.

Instead, the district court in *Coppernoll* looked to several factors to determine that modular homes are "real property" and not "personal property." First, state building regulations for site-built homes apply in full force to modular homes, but not to manufactured homes, and modular homes are almost always constructed according to universal building standards. *See* 13 Va. Admin. Code § 5-91-160 (providing that all industrialized (i.e. "modular") buildings meeting international building standards are presumptively compliant with state housing laws); Va. Code Ann. § 36-71.1 (exempting manufactured homes from coverage under the Virginia Industrialized Building Safety Law, which applies to standard site-built homes and modular homes). Thus, state law seems to treat the former two (site-built and modular homes) nearly identically and the latter as a separate form of mobile housing.

Second, over thirty years ago the FTC issued a clear advisory opinion stating that "[a]

modular house which meets one of the sets of uniform home construction codes[] or a construction standard established by a state for modular homes as distinct from mobile homes as they are defined by the state, is real property and should, therefore, be excluded from the *Section 101(1)* definition of 'consumer product.'" *FTC Advisory Opinion*, 90 F.T.C. 980, 981 (1977). Advisory opinions prepared by the FTC are by nature interpretive guidance not subject to notice-and-comment rulemaking. Therefore they are entitled to *Skidmore* deference only, and not *Chevron* deference; hence such interpretive guidance from agencies regarding the laws they are charged to enforce is entitled to respect only "to the extent that the interpretations have the power to persuade." *Christensen v. Harris County*, 529 U.S. 576, 587 (2000) (quoting *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944)). In this case, however, the distinction the FTC drew years ago seems reasonable today: modular homes are akin to site-built homes, and thus are real property, since they are regulated by the same standards as site-built homes.

At oral argument, Plaintiffs attempted to distinguish the *Coppernoll* and *Clark* cases by arguing that those cases dealt with "land/sale packages," where the modular home was purchased along with land in one single transaction. It is unclear if either of those cases actually involved such arrangements. However, even if Plaintiffs' contention were correct, modular homes themselves should still be considered real property. The FTC Regulations (which are entitled to the higher deference specified in *Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 842-44 (1984)) provide that

> In the case where a consumer contracts with a builder to construct a home, a substantial addition to a home, or other realty (such as a garage or an in-ground swimming pool) the building materials to be used are not consumer products. Although the materials are separately identifiable at the time the contract is made, it is the intention of the parties to contract for the construction of realty which will integrate the component materials. Of course, as noted above [with reference to paneling, dropped ceilings, siding, roofing, and

> other items sold "over the counter"], any separate items of equipment
> to be attached to such realty are consumer products.

16 C.F.R. 700.1(f). Just as site-built homes are constructed on realty from building materials separately identifiable at the time of sale but which are not considered consumer products, the "package" of modules that make up a modular home cannot be considered a consumer product, whether sold in a transaction with or without land.

Plaintiffs finally argue that even if this Court were to view the *Coppernoll* and *Clark* cases as persuasive, Yates approbated at the time of sale that the home they were selling was a "manufactured home" through some of its literature. Therefore, Defendants should not be able to reprobate the home as a "modular home," and thus the MMWA should apply based on what Yates had originally called the home at the time of sale. This argument is flawed. No matter what the terms used in some warranty pamphlets distributed by Yates to Stanley, both parties knew what type of home was being transacted: a "Commodore Modular home," as the *Complaint* specifically refers to it. Plaintiffs do not argue that they expected to receive a manufactured home, and instead received a flawed modular home. Plaintiff's surprise instead radiates from the home's allegedly flawed construction, not the species of product received.

Nor can Plaintiffs point to any evidence that Defendants believed they were selling a manufactured home, other than generic warranty forms and boilerplate language that were distributed to every customer purchasing a modular or manufactured home from Yates.[1] Paragraph 32 of the contract between Yates and Stanley for the home shows that the parties expressly agreed that "the Unit is not a consumer product." *Exhibit Contract* ¶ 32. While in and

---

[1] Indeed, at oral argument counsel for the Defendants stated to the Court that Yates sells both modular and manufactured homes, but that there is often overlap in the type of pamphlets given to purchasers.

of itself this fact would carry little legal weight, it nevertheless debunks Plaintiff's contention that Yates thought they were selling a manufactured home at the time of sale.

Because Plaintiffs provide me with no strong argument for holding otherwise, I will follow the *Coppernoll* and *Clark* courts in holding that a modular home is not "personal property," and is therefore not covered under the MMWA as a "consumer good." Therefore, Plaintiffs' MMWA claim will be dismissed from this case. Additionally, pursuant to my discretion to decline to hear the remaining state law claims under 28 U.S.C. § 1367(c)(3), I will dismiss without prejudice Plaintiffs' state law claims as well.

## IV. CONCLUSION

For the reasons stated above, I will **GRANT** Defendants' *Motion to Dismiss* with respect to Plaintiffs' MMWA claim under federal law. Because the only remaining claims are based in state law, those claims shall be dismissed without prejudice pursuant to my authority under 28 U.S.C. § 1367(c)(3).

The Clerk is directed to send a copy of this *Memorandum Opinion* and the accompanying *Order* to all counsel of record. The Clerk is also ordered to strike this case from the active docket of this Court.

Entered this 31st day of January, 2008.

s/Jackson L. Kiser
Senior United States District Judge